## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

AARON GARRETT, as Personal Representative of the
Wrongful Death Estate of Andres Grado, deceased,

      Plaintiff,

v.                                 Cause No.

BOARD OF COUNTY COMMISSIONERS
FOR THE COUNTY OF EDDY, and
BILLY MASSINGILL,

      Defendants.

## COMPLAINT FOR THE RECOVERY OF DAMAGES CAUSED BY THE DEPRIVATION OF CIVIL RIGHTS AND WRONGFUL DEATH

Plaintiff brings this complaint for damages caused by the violation of the civil and constitutional rights of decedent Andres Grado. Plaintiff files this complaint under the federal Civil Rights Acts, and the Constitution of the United States. Plaintiff also brings claims under the New Mexico Tort Claims Act and Wrongful Death Act. In support of this Complaint, Plaintiff alleges the following:

### JURISDICTION AND VENUE

1.     Jurisdiction over the subject matter of this action is conferred by 28 U.S.C. §§ 1331, 1367 and 42 U.S.C. §§ 1983, 1988.

2.     Venue is proper as the acts complained of occurred exclusively within Eddy County, New Mexico.

## PARTIES

3.      Plaintiff is the duly appointed personal representative of the Wrongful Death Estate of Andres Grado, deceased.  Mr. Grado was an inmate in the custody and care of the Eddy County Detention Center (hereinafter "ECDC") from December 31, 2018 to January 4, 2019.

4.      While incarcerated, Mr. Grado was completely dependent upon ECDC for his care and well-being.

5.      Defendant Board of County Commissioners for the County of Eddy ("Board") is a governmental entity within the State of New Mexico and a "person" under 43 U.S.C. § 1983. The Board owned and operated ECDC as a county jail and detention center.

6.      At all material times, Defendant Massingill was employed by the Board as the Warden of ECDC.

7.      Defendant Massingill was acting under the color of state law and within the course and scope of his employment by the Board at all material times.

8.      Defendant Massingill is being sued in his individual capacity only.

## FACTUAL BACKGROUND

9.      On December 31, 2018 in Eddy County, New Mexico, Mr. Grado was arrested and was booked into ECDC.

10.     Mr. Grado was 30 years old.

11.     When he arrived at ECDC, Mr. Grado was visibly intoxicated.

12.     Mr. Grado later informed the nurse and guard on duty that he was not feeling well and his chest hurt.

13.     Mr. Grado continued to complain to ECDC personnel that he was not feeling well.

14.     On January 3, 2019, an ECDC nurse finally went to Mr. Grado's cell and found that Mr. Grado was sweating, pale, and anxious.

15.     Mr. Grado began to have convulsions and seize.  An ECDC corrections officer attempted to restrain Mr. Grado and performed CPR on Mr. Grado.

16.     Mr. Grado was taken to Carlsbad Medical Center and then airlifted to University Medical Center in Lubbock, Texas.

17.     Mr. Grado passed away on January 4, 2019, as a result of alcohol withdrawal.

18.     ECDC had no policies or procedures in place to screen for, monitor or treat inmates suffering from alcohol abuse who might experience alcohol withdrawal and b injured or die as a result.

### COUNT I: VIOLATION OF DUE PROCESS INADEQUATE MEDICAL CARE
### (Defendant Massingill)

19.     Plaintiff restates each of the preceding allegations as if fully stated herein.

20.     Plaintiff has a Fourteenth Amendment right to humane conditions of confinement and adequate medical care.

21.     Defendant Massingill knew chest pain is an obvious sign of a serious medical condition.

22.     Defendant Massingill knew ECDC was unequipped to monitor for or treat Mr. Grado's condition at the jail.

23.     Defendant Massingill knew Mr. Grado should have been transported to a hospital for appropriate medical care.

24.     Defendant knew any medical provider in the community would send a patient experiencing chest pain and symptoms or alcohol withdrawal to an emergency room for further evaluation.

25.     Mr. Grado told medical staff he was not feeling well as he was being booked into ECDC.

26.     Defendant failed to provide Mr. Grado medication or treatment for his alcohol withdrawal.

27.     Mr. Grado began experiencing chest pain soon after being booked into the jail.

28.     Defendant Massingill failed to adequately respond to his medical condition.

29.     Defendant Massingill actively ignored Mr. Grado's symptoms.

30.     Mr. Grado was completely reliant on Defendant Massingill for his medical needs while at the jail.

31.     Mr. Grado had no ability to contact 911 on his own while housed at the jail.

32.     Defendant Massingill acted as gate-keepers to Mr. Grado's care.

33.     On January 1, 2019, Mr. Grado began experiencing symptoms of a alcohol withdrawal.

34.     Mr. Grado required immediate hospitalization on January 1, 2019.

35.     Instead, Defendant Massingill left Mr. Grado in his cell.

36.     Mr. Grado called for medical care for two days complaining of chest pain and other pains before he finally seen by the nurse.

37.     Defendant Massingill knew Mr. Grado's chest pain was so excruciating he was vomiting and hallucinating as a result.

38.     Mr. Grado suffered a seizure on January 3, 2019.

39.     The severity of Mr. Grado's condition was obvious to everyone who saw him.

40.     The seriousness of Mr. Grado's medical condition was so obvious that inmates in the pod with Mr. Grado attempted to get him medical care.

41.     Defendant Massingill called 911 only after Mr. Grado had experienced a seizure, lost consciousness, bowel, and bladder control.

42.     Defendant Massingill began life-saving measures, including CPR for several minutes after Mr. Grado lost consciousness and they were not able to detect a pulse.

43.     Defendant Massingill knew the risks Mr. Grado faced when he faced an extended length of time without oxygen to his brain.

44.     While Mr. Grado lay unconscious with no pulse in the cell at ECDC, Defendant Massingill exhibited no compassion or concern for Mr. Grado.

45.     Defendant Massingill was deliberately indifferent to a serious and obvious medical need when they failed to treat Plaintiff's chest pains.

46.     As a proximate and foreseeable result of Defendant Massingill's deliberate indifference to Mr. Grado's serious, obvious medical condition, Plaintiff suffered injuries including death, physical injuries, pain and suffering, emotional distress, exacerbation of his medical condition.

### COUNT II: NEGLIGENT PROVISION OF MEDICAL CARE

47.     Plaintiff restates each of the preceding allegations as if fully stated herein.

48.     Defendants had a duty to ensure Mr. Grado received adequate care while housed at ECDC.

49.     Mr. Grado began experiencing chest pain and other symptoms of alcohol witdrawal on January 1, 2019.

50.     Mr. Grado began experiencing chest pain and other symptoms so severe it caused him to vomit and pass out.

51.     The standard of care required immediate transport to a hospital once he began exhibiting these symptoms.

52.     A reasonable healthcare provider would have adhered to the medical standard of care.

53.     A reasonable healthcare provider would have transported Mr. Grado to a hospital the moment he began exhibiting symptoms of chest pain.

54.     Upon information and belief, ECDC has created a policy of refusing transport of inmates to the hospital as a cost-saving strategy.

55.     Defendants employ medical staff at ECDC.

56.     Defendants are vicariously liable for the acts and omissions of its employees by respondeat superior.

57.     Defendants had a duty to properly and adequately train its medical staff to respond properly to emergency situations.

58.     Defendants breached their duty of care.

59.     Defendants' negligence caused Mr. Grado death and damages.

60.     Defendants' negligence was the proximate cause of this damage.

61.     As a proximate and foreseeable result of Defendants' negligence to Mr. Grado's serious, obvious medical condition, Plaintiff suffered injuries including death, physical injuries, pain and suffering, emotional distress, exacerbation of his medical condition.

## COUNT III: CUSTOM AND POLICY OF VIOLATING CONSTITUTIONAL RIGHTS

62.     Plaintiffs restate each of the preceding allegations as if fully stated herein.

63.     The Board delegated the responsibilities of running ECDC to Defendant Massingill.

64.     Pursuant to state law, jail administrators acting in their official capacity are regarded as the final policy makers of their respective institutions.

65.     Defendant Massingill was therefore the final policy maker responsible for the hiring training and supervision of ECDC employees during his tenure.

66.     Defendant Massingill's policies therefore became the customs and policies of the County.

67.     Defendant Massingill practices a custom and policy of providing inadequate medical care to inmates at ECDC.

68.     The policies, customs, decisions, and practices of Defendant Massingill created a climate within ECDC where staff was unwilling to obtain medical care for inmates, even in the face of a clear medical emergency.

69.     Defendant Massingill operates ECDC under policies and practice of providing unconstitutional care of inmates, especially related to the provision of medical care.

70.     Defendant Massingill created an environment where detention officers did not contact medical staff for inmates experiencing medical emergencies, including chest pains, even if those emergencies were obvious.

71.     Defendant Massingill's policies created an environment where his staff were indifferent to chest pains.

72.     Guards and Nurses actions during Mr. Grado's detention followed the policies and practice put in place by Defendant Massingill.

73.     There is a causal connection between Defendant Massingill's policies and the violation of Mr. Grado's constitutional rights, which amounts to deliberate indifference.

74.     As a proximate and foreseeable result of Defendants' deliberate indifference to Mr. Grado's serious, obvious medical condition, Plaintiff suffered injuries including death, physical injuries, pain and suffering, emotional distress, exacerbation of his medical condition.

## JURY DEMAND

75.     Plaintiffs hereby demand a trial by jury on all counts.

WHEREFORE, Plaintiffs requests judgment as follows:

1.      Compensatory damages in an as yet undetermined amount, jointly and severally against all Defendants, including damages for attorney's fees and emotional harm.

2.      Punitive damages in an as yet undetermined amount severally against the individually named Defendant.

3.      Reasonable costs and attorney's fees incurred in bringing this action.

4.      Such other and further relief as the Court deems just and proper.


ELIAS LAW P.C.


By:     */s/ Ali M. Morales*
        ALI M. MORALES
        MICHAEL C. ROSS
        DAVID E. IDINOPULOS
111 Isleta SW, Suite A
Albuquerque, NM 87105
(505) 221-6000
*Attorneys for Plaintiff*